also known as Lalo, also known as Flacco, also known as Silver, also known as Silverio, also known as Eduardo, also known as Lane, at Balance. Mr. Burstein for the Balance, Ms. Allen for the Epoly. Good morning. I just want to note that Judge Henderson is not able to be here today, and she intends just to listen to the recording of the hearing. She'll listen to the recording of the oral argument, and she'll decide the case based on the record and the oral argument that she'll listen to. We're ready to proceed with the first case. Mr. Burstein. Thank you, Your Honor. Morning, Your Honors. Devin Burstein on behalf of Mr. Gerardo Gonzalez-Valencia. Mr. Gonzalez-Valencia pleaded guilty to the sole counts of the indictment, conspiracy to import cocaine. He was found to have accepted responsibility for his conduct. And in exchange, the benefit he received for his bargain is a life sentence. Well, there was no bargain, was there? He pled to the indictment with no plea agreement. He waived his rights to a jury trial, to confrontation, all the other panoply of rights that come along with the trial right. But he did that with no bargain. There was no agreement with the government. They didn't agree to anything. He just pled to the indictment. And as a result, he was sentenced to essentially die in prison. We believe there's no justice in that sentence and that it should be vacated for several reasons. I think the most straightforward reason is that we know on this record that Uruguay was absolutely clear at every level of its judiciary and executive that whether binding or not, its expectation was that he not receive a life sentence. We know that that was heavily discussed in the sentencing papers. All of the papers that the government put in the supplemental appendix show those documents. They were all before the district court. And what is silent in the record is whether the district court considered any of that in fashioning its sentence. That's a very important consideration because it stands in stark contrast to the majority of the types of issues district courts day in and day out base their sentences on. But your client's counsel didn't ask the court to explicitly address that on the record. Your client's counsel was given that opportunity when the court said anything else. Is there anything we're missing? Anything else we should discuss? And your client's counsel never asked that what you're saying should have happened. Correct. But. Okay. Okay. So correct. But. The ask was ahead of time. That's the point of litigating these things. And then I understand the government's argument. So when I say that, I hope I'm clear. The ask was in the papers and in all the documents that were filed. And that's the point. And then the district court imposed sentence, said life. It wasn't like before I imposed sentence anything else. Imposed life and then said, are there any further objections? And really, it's such a form over substance thing. We know she imposed life. So what he was supposed to futilely say, oh, yeah, but you forgot this. I mean, it's just presumably there was an allocution before she pronounced sentence. And was there a request at that point that she specifically address this issue? Well, no, but it's the same thing we're doing right now. It would be like, well, you didn't mention an oral argument counsel this point in your brief. It's like, right. Judge pan, because that's why I wrote you a 35 page brief, because I don't have time to discuss everything. And if I started to repeat my whole brief, I think both yourself and Judge Randolph would say, counsel, why are you reading your brief to us? We've read it. So, right. The oral argument portion of the sentencing was to address the court's questions. The court controls the oral argument portion of those of the sentencing, just like this court controls my questions. The whole thing that I find incredibly troubling about this whole line is this is not supposed to be a gotcha game where we're bureaucrats saying, oh, he didn't dot this. I didn't dot this T. Our job collectively is to do justice. And here we have a real issue. You want to go? I was clear as can be. Don't impose a life sentence. Maybe that would impact the judge. Maybe it wouldn't. But shouldn't we know the answer to that before we sentence somebody to die in prison? And I don't I hate the term life in prison because it's such a euphemism. We don't have parole. This is not a California kind of or state court thing. Life is life. You leave in a body bag. And I just don't want to make let's not put a smiley face on that. This is as serious as it gets, but for the death penalty and we have something that is undisputed that we don't know the answer to. And there is a case law says that a district court doesn't have to address every argument that's in the course of course. And your client's counsel did not ask her to address this. So, like you said, this is not a gotcha game. It's also not a gotcha game on the district court. Our counsel respectfully have to disagree. Do I agree that the lower council below was should have done a better job? Yes. Could counsel for the government have also raised it because it was in their papers? Yes. But to say this wasn't raised, I don't think is fair, Your Honor. It was raised. All of these documents were before the judge. But your argument in your brief is that she should have discussed it on the record. And nobody asked her to discuss it on the record during the sentencing hearing. OK. And so we're left. I mean, all I can say to that is, yes, that's true. And then the question and then that begs the question. So what does this court do? Can this court look and say that as a matter of international comedy, as a matter of the strong preferences, as a matter of protecting United States citizens in the same position overseas, as a matter of plain error, which is the standard of review, as a matter of plain error, should the court have looked at this? Because how can you meet the plain error standard when we have case law that says a court doesn't have to address everything in the papers? Because the record at the sentencing. I can easily meet the plain error standard. Bigly is a plain error case where it was reversed for failure to address on the record a non frivolous argument. This court has a whole bigger body of law that makes the essential point because it's a common sense point. Judge, if you have a major issue for mitigation and you don't say anything about it, we sitting as the court of appeals aren't sure you considered it. If we aren't sure you considered it, we can't affirm your sentence because somebody could be doing life in prison on a mistake. We don't do that in America. That's what separates us out. And I'm not asking the court, send it back for a new trial. This the sentencing transcript was 63 pages. It would take Judge Howell 10 pages. We can all go back and do this in 15 minutes and then we can look at ourselves in the mirror and say, if he gets a life sentence, despite what Uruguay said, then we know at least we've done our job. Due process has been had. Justice has been served because we know. We know she considered the point. What is the harm? Imagine we're sitting here in harm is just not the standard that we're applying here. But imagine a parallel universe, your honor, where we do know. And she says, you know what? I didn't consider it. And I'm going to give him 35 years. And instead, we that universe exists. But instead, we said, you know what? We're going to get overly focused on the standard of review and we're going to hang our head on that. And too bad. So sad. You die in prison. What's more just? What speaks better of the American justice system to the man on the street, to the woman on the street, that we got it right because we knew there was an issue that needed to be gotten right or that we said, you know what? Your lawyer messed up and didn't use the right phraseology and his talismanic words weren't enough. And so sorry you die in jail, sir. That's not who we are. That's not our values. I don't think anybody as an officer of this court would appreciate that kind of ruling over one that just simply said, let's get it right. So you make an interesting point, and we are a court of law and the plain error standard is intended to promote justice because it says that even if you don't raise something, we will correct it if you can meet these four prongs of the test and we'll correct it anyway, even if you didn't preserve it. And so the whole structure and system of that standard of review is to promote justice. Right. Just still have to meet the four prongs. It's not a general. It would be just it would be fair for us to do something. That's not what we're doing here. We're a court of law. We're applying a standard. The standard promotes justice. And you have not shown how you meet that standard. The plain error stand. I disagree, Your Honor. We did show it. I quoted you bigly. I disagree with the exact premise. This is a common law court derived from both courts of law and courts of equity. Twenty one. Twenty eight U.S.C. twenty one oh six gives this court express authority to do exactly what I'm asking. And we clearly meet the plain error standard even in its standard form. The plain error standard. One error. The district. This court's law is crystal clear. The district court must address non frivolous arguments. That I mean, you're shaking your head, but that's what this court's case law says. Our case law says that the district court isn't required to address every argument. It says it's not required to tick off every thirty five fifty three a factor. It doesn't say it's not required to address significant non frivolous arguments. That would be a nonsense that we're having. This agreement means it's not plain clear or obvious. Is it plain clear? I would I would point this court to Bigley and to Borda. And it is obvious this is as obvious as it can be. And if it's obvious and the district court had to do it, if the district court had to do it and didn't, that's plain error. That I agree on. OK. No. OK, thank you. We'll give you two minutes for rebuttal. Thank you, Your Honor. Miss Allen. Thank you, Your Honor. Catherine Allen, on behalf of the United States, I just want to make sure that I clarify one thing here regarding the merits of the argument that counsel was making, which is just I want to just walk through exactly what happened with respect to the extradition. He is correct that the initial request from Uruguay did request that the United States make assurances that he would not be sentenced to life in prison. And the United States responded and did not provide any assurances. And that's that supplemental appendix. Excuse me. That's a supplemental appendix. 173 to 176. The AGs that the Uruguayan attorney general's letter confirms this at supplemental appendix 95. It states that the attorney general's office, quote, understands that, quote, the failure to provide guarantees with respect to the non imposition of the sentence of life imprisonment is justified. So I just want to be very clear that there were never any assurances by the United States in the extradition process that he would not be sentenced to life imprisonment. Is there anything in the sentencing guidelines that deals with this type of a situation where the country that is where the individual is being extradited from makes a request with respect to sentencing? Is there anything in the guidelines that deals with that? Not that I'm aware of, Your Honor. And, you know, this argument was raised for the the merits argument was raised for the first time in his supplemental sentencing memorandum after the evidentiary hearing. And it was raised, you know, separate and apart from his arguments about the guidelines and separate and apart from his argument about the thirty five fifty three a factors in the guidelines. The guideline calculation resulted in a life sentence. Correct. That's correct. So nothing in the guideline sentence would change as a result of Uruguay's request. Not that I'm aware of, Your Honor, and just to be clear, it was only Uruguay's initial request that requested assurances that the United States not sentence him to life imprisonment. But then after the United States responded, did not provide those assurances. The Uruguayan attorney general's office recognized that the United States had not provided those assurances. And Uruguay then nonetheless still extradited him. So we think that it's very clear on the merits that that there was no there. Ultimately, there was no condition and there were no assurances that he wouldn't be sentenced to life in prison. And the import of Judge Randolph's question is, if the district court were to take this into account, it would have had to. That would be depart or vary from the guidelines in order to account for Uruguay's position. That's correct. And sorry, I was just trying to make clear that we don't believe that was Uruguay's position as a factual matter because it extradited him. Uruguay's position may be we would prefer that this person not get a life sentence, but it's not binding. The United States didn't say, OK, that's a condition of you giving none of that happened. Exactly. And but understanding that Uruguay's preference would be for this defendant to not receive a life sentence. If the district court were to take that into account. For it to actually impact the sentence, the court would have had to actually depart from the guideline range. That's correct. And I just want to also be very clear, your honor. Gonzalez Valencia never argued below that even in the supplemental sentencing memorandum that the district court in its discretion should consider Uruguay's preference or request for him not to have a life sentence. The argument was that as a matter of law, his extradition was conditioned on him not receiving a life sentence and therefore the district court couldn't impose a life sentence. But he never argued that as a mitigation factor, because Uruguay requested this, the district court should exercise its discretion and depart from the guidelines range. That that argument wasn't presented at all. And so I think that's no basis for saying that the district court erred by failing to explicitly address that on the record at the sentencing hearing. Did the Uruguay court give any reasons for its request? So. So he he challenged his extradition in Uruguay and the criminal court, the lower level of court imposed the condition and it based it as detailed in his supplemental sentencing memorandum. It based it not on the treaty, but on sort of Uruguayan domestic law and and other things outside of the treaty. And so you're the lowest court imposed that condition. But then again, I think the key points are that when Uruguay requested those assurances, the United States did not provide them. Uruguay was aware of that and then extradited him anyway. I understand that. But what I'm asking is, what was the reasoning of the Uruguay criminal court for making that request? I believe, Your Honor, that it was based on domestic law and some international. Perhaps international agreements. I know that it was not based on the treaty, the extradition treaty between the United States and Uruguay. For the particular circumstances of the defendant? No, Your Honor. If the court has no further questions, we urge you to affirm the conviction and sentence here. Thank you. Thank you. I turn right. Normally, I do this off the iPad and this was my I just learned that no iPads allowed up here. So I am going to hopefully end with a few quotes that maybe can convince this court that this is, in fact, plain error. So the two of them are from Bigley and the last one is from McKeever. Both cases from this court by, quote, by failing to consider the defendant's non-frivolous mitigation argument, the district court committed plain error. Bigley, Bigley again, when a judge fails to address a defendant's non-frivolous mitigation claim based on a thirty five fifty three a sentencing factor, a reviewing court and the public cannot adequately evaluate the judge's sentencing selection. Was that argument made at the sentencing hearing? No, that's why it's plain error. Unfortunately, if what the government tells us is accurate, we don't have the district court didn't have any mitigation arguments in front of. I'm not sure what's a mitigation or the mitigation argument would be that out of respect for the law, which is a thirty five fifty three a factor, the judge should have considered order wise condition that an expression as a matter of. And I can answer your honor's question as to why it was there. It should have considered order wise expression and condition that he not receive a life sentence. That's a mitigating factor that as a matter of international comedy, the extraditing state said, don't do this. The reason the extraditing. Sorry, but the government just said that that wasn't the argument made below. The argument made below was that it was a condition of the extradition. So it's more of a legal question, not a mitigating thing that the court can take into consideration under thirty five. And that's why your honor was asking me how I meet the plain error standard, because this precise nature of this argument wasn't prop. This wasn't artfully raised by a council below. It was raised, as my opposing counsel says, as this was a binding condition. I mean, here's an argument has morphed because before you were saying the argument was in the papers and then she didn't expressly state it. And now you're saying now that you're confronted with the fact that this particular argument about mitigation wasn't in the papers. Now you're making a different argument, which is that this is something the court should have just thought of on its own. No, we say it in our brief. So the first part is that the district court was required under Rule 32 to resolve this dispute. There is a dispute in the papers. The papers say the defense papers say you are bound by Uruguay's condition because there is a reasonable understanding by Uruguay that the U.S. would comply. The government says that was not the understanding. That was a legal dispute that the district court didn't resolve, but was required to resolve under Rule 32. We discussed that at length in our brief, especially in the reply. Why wasn't the district court's sentence a resolution of the dispute? Because the district. The defendant said no life sentence. That's a condition of my extradition. And the district court pronounces life sentence. Because the district court. Resolved the dispute? No, because the district court didn't mention their dispute. This district court didn't rule on it. Look at how the rest of the district court. I mean, this is a district court that when there's an issue before her, she rules very clearly. She lays out the two sides and then rules this. An honest view of this record is that it got missed. We can assign blame wherever, but to say that she ruled on it is a judicial fiction. She didn't rule on it. We know she didn't rule on it because she's very clear on everything else. And then this big elephant just got silent. It somehow got missed. You know what? As the Supreme Court was just talking about in Rosales Morales, there's some times where mistakes just happen. This is a complex process. The problem is a mistake happened in a case where some guy got life. And the mistake was his client not asking for this ruling on the record. Which ruling your honor? Sorry to ask you a question. You should have addressed on the record. The council never asked for it. So I don't see that as the district court's mistake. I see that as counsel's mistake. Fine. I mean, I counsel asked for one of the rulings in the papers. We were. That's where we were. Now, what we're talking, you're talking about the mitigating factor argument, right? That wasn't raised. That's right. Either one. There was no request that the district court address anything that you're saying here at the sentencing hearing at the center. And your claim here is that she needed to address it at the sentencing hearing. That's what we're talking about. So the mistake was not the district court's mistake. It was counsel's mistake. But your honor, if I ask for something in my sentencing papers. And the district court doesn't rule on it at the sentencing hearing. Whose fault is that? It's your fault for not asking the court to do so. So I asked for it in my sentencing papers. The district court doesn't do it. And then I have to ask for it again. I'm a former district court judge as a trial judge for 12 years, also on another court. And at sentencing, there could be an enormous record before the court. And it's up to the parties to focus the court on what they think are the most important issues. And there's a reason why we have precedent that says a district court is not required to tick off everything that's in the papers because it's not practical. Some sentencing hearings last more than a day. The record can be enormous. So it is up to counsel to focus the court on what are the important issues that need to be addressed on the record at the sentencing. So if it's counsel's fault, let's just assume it's counsel's fault. Who bears the brunt of the fault right now? What does the law say? The client at this point. Well, I think this is a classic plain error situation. And I think that the court should exercise its discretion to send it back because of the gravity of what we have now heard. 15 minutes of argument about whether the issue should have been raised. Number one, number two, whether it was raised number three, what the district court should have done after being alerted to this issue. What we haven't heard is a single word about the merits. If the district court if this were placed before the district court. What is the argument that that says that the district court should not should give a lesser sentence because a criminal court in Uruguay requested that? Oh, what is the merits argument on this? So there's Supreme Court. That's a great question. Thank you. It's a question that goes back to Rousher in the Supreme Court, which says that our domestic courts, as a matter of international comedy, should provide deference to the requests and conditions of the extraditing courts as a means of protecting United States citizens. I don't think that's the law. That is the law. Deference, yes. When when we have made a representation during the extradition, but we've made no guarantee during the extradition. And there's no law that I'm aware of that says because a criminal court in Uruguay requested something, the United States has to agree to it. We didn't agree. I agree with you that there's not doesn't say you have to agree to it, but having to agree to it and considering it are different. Think of it. We're on the other foot. And this court ordered extradition. I know it doesn't. But imagine it ordered extradition. And it said very clearly in the United States, it's very important to us that this guy cannot get more than a 30 year sentence. He's a United States citizen, and it's important. Can you please consider that? And then Uruguay or pick a state, you know, went ahead and imposed life sentence without even mentioning this court statement that was then affirmed by the Supreme Court that it's important to us that he doesn't get it. You know, that matters. That's the kind of comedy. How would this court feel? It's like, well, we said to you, we're going to extradite, but please take a real look at giving him less than 30 years. All right. I've got your argument. Thank you. Thank you. The case is submitted.
judges: Henderson; Pan; Randolph